**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 09a0784n.06

**No. 08-5700**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 14, 2009**

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) ON APPEAL FROM THE UNITED STATES |
| v. | ) DISTRICT COURT FOR THE WESTERN |
| | ) DISTRICT OF TENNESSEE |
| | ) |
| JOEY DEMONT CARR, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Before:  MOORE and ROGERS, Circuit Judges; THAPAR, District Judge.[*]

**ROGERS, J.**  Appellant Joey Carr pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a) and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).  In his plea agreement, Carr reserved the right to appeal the district court's denial of his motion to suppress, and he does so here.  We remand so that the district court may make factual and legal findings that more clearly distinguish between a consensual encounter and a *Terry* stop.

**I.**

In the evening of August 29, 2006, three officers with the Madison County Narcotics Unit—Lieutenant William Carneal, Investigator Marc Byrum, and Investigator David

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Coffman—approached a white Chevrolet Tahoe that was sitting in a car wash bay on Lane Avenue in Jackson, Tennessee. The officers parked their unmarked Ford Explorer facing the Tahoe, flashed the emergency lights on their vehicle, and then got out of their vehicle and advanced toward the Tahoe on foot. The officers eventually arrested the defendant—the Tahoe's only occupant—and then performed a warrantless search of the Tahoe that revealed $11,000.00 in cash, two sets of digital scales, a box of plastic sandwich bags, five grams of marijuana, 215.9 grams of crack cocaine, a small bottle of hydrocodone, and a .45 caliber pistol containing a magazine loaded with six rounds. A search of the defendant also revealed that he was carrying $7,877.00 in cash on his person.

Following his indictment, the defendant filed a motion to suppress the evidence that was obtained from his arrest and the warrantless search of his vehicle. Before the district court, Lieutenant Carneal testified that the defendant's vehicle attracted his attention and raised suspicions in his mind because: (1) it was parked in a car wash bay at night, and no one was washing it; (2) the car wash was located in a high-crime area; and (3) the car wash itself was known as a meeting place for drug dealers. Based on Lieutenant Carneal's testimony, the district court concluded that the defendant's Fourth Amendment rights had not been violated and denied Carr's motion to suppress. Specifically, the district court issued the following ruling at the end of the hearing:

> I find that the officers had a right to approach the vehicle at the car wash. Perhaps they needed no reasonable suspicion or probable cause[,] for an officer to approach as a citizen to ask a question is permissible without implication of the Fourth Amendment.
>
> But in this case the officers had more. We had a vehicle apparently unoccupied in a car wash for several minutes, long enough for two passes, with nobody washing the car and no activity apparently going on around the car. The officers, it seems to me, had an obligation at that point to investigate to find out what the car was doing there. Was the driver hurt or injured? Was the car stolen? Was

there a crime in progress? So the officers had an articulable suspicion, a reasonable suspicion to approach the vehicle in the first place.

Officer Carneal – I'm sorry, Officer Byrum asked the defendant to get out of the vehicle; and as the defendant was getting out, the court finds that the officers saw a bag full of what appeared to be marijuana, and at that point the officers had probable cause to arrest the defendant.

The subsequent search of the vehicle was a search incident to arrest or an inventory search of the vehicle before it was towed.

So what we have here is a citizen encounter with an officer which later became reasonable suspicion to ask the defendant to get out of the car, which then ripened into probable cause for an arrest. The search after that point was a search incident to arrest and an inventory search of the vehicle before it was towed away.

For those reasons, and because I credit the testimony of Officer Carneal and discredit the testimony of defendant Carr, the motion to suppress is denied. An order will be entered incorporating these oral rulings.

As a result of this ruling, the defendant entered a conditional guilty plea that reserved his right to challenge the district court's denial of his motion to suppress. He does so now on appeal.

**II.**

A remand for clearer factual and legal findings is necessary to determine whether the officers in this case violated Carr's Fourth Amendment rights. "Under the Fourth Amendment, there are three types of permissible encounters between the police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause." *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994) (citing *United States v. Ushery*, 968 F.2d 575, 579 (6th Cir. 1992); *United States v. Flowers*, 909 F.2d 145, 147 (6th Cir. 1990)). In our recent

decision in *United States v. See*, 574 F.3d 309 (6th Cir. 2009), a case with some factual similarity to the present case, we concluded that police officers had initiated a *Terry* stop rather than a consensual encounter and held that the district court should have granted a motion to suppress. *See id.* at 311-15. In that case, a police officer noticed that a car occupied by the defendant See and two other men was parked in a dimly lit portion of a parking lot at 4:30 in the morning. *Id.* at 311. The parking lot itself was located in a high-crime area. *Id.* Because the police officer thought that these circumstances were suspicious, he approached and then parked his patrol car in front of See's vehicle so as to prevent it from moving. *Id.* at 311-12. The resulting encounter with the occupants of the parked vehicle revealed that See was in possession of a firearm from which the serial number had been removed. *Id.* at 312. See later moved to suppress the evidence obtained from his vehicle, but the district court denied that motion. *Id.* at 312-13. The district court held that there had been a *Terry* stop, but that the stop was supported by reasonable suspicion. *Id.* at 312. On appeal, this court reversed, agreeing that the police officer's actions had constituted a *Terry* stop as opposed to a consensual encounter, but concluding that the *Terry* stop was unlawful because the totality of the circumstances did not provide the police officer with reasonable suspicion that criminal activity was occurring. *Id.* at 313-15. Specifically, the court held that being parked in a dimly lit portion of a parking lot late at night in a high-crime area did not raise sufficient reasonable suspicion to conduct a *Terry* stop. *Id.* at 313-14.

The law applied in *See* makes clear that there are two relevant questions in this case, both fact-dependent and neither decided with sufficient clarity by the district court. The first is whether the initial contact between the police and the defendant was a *Terry* stop or a consensual encounter.

*See* suggests that this depends, at least in part, on whether the police car "block[ed] [the defendant]'s car from exiting." *Id.* at 312; *see also id.* at 315 (Gilman, J., concurring) (suggesting that the police officer "should have simply parked his patrol car alongside See's vehicle to carry out the investigation in a consensual manner"). The United States suggests that this factor may not be present here, and Lieutenant Carneal testified that he did not park his vehicle so as to prevent the defendant from driving away. Another factor that may have some bearing on whether there was a *Terry* stop is that the police may not have left their emergency lights on during the encounter, but instead may have used those lights only to identify themselves. The defendant testified that the police simply turned the emergency lights on and then off again, allowing them to flash just once, which is consistent with Lieutenant Carneal's claim that he only activated the emergency lights in order to identify himself as a police officer rather than to detain Carr. The district court's opinion is simply not clear as to whether there was a *Terry* stop or merely a consensual encounter in this case.

Moreover, even if there were a *Terry* stop, there is some question whether the stop was supported by reasonable suspicion. While the *Terry* stop in *See* was unlawful, there are factual disparities between this case and *See* that might permit the conclusion that a *Terry* stop was warranted in this case. For instance, the defendant in this case was parked at a location that was particularly known as a meeting place for drug dealers, and the defendant's car was not being washed even though it was parked in the bay of a car wash. The defendant in *See*, by contrast, was not parked in a location known for any specific type of criminal activity: he was merely parked in a high-crime area late at night. In light of our remand with respect to the issue of consensual

encounter, it makes sense that on remand the district court should also determine in the first instance, now with the benefit of our recent holding in *See*, whether the *Terry* stop, if there was one, was supported by reasonable suspicion.  In this regard, the district court is more familiar with the relevant evidence, has had an opportunity to observe the witnesses and evaluate their credibility, and has the ability to take additional testimony to develop the record further if necessary.

III.

For these reasons, we **VACATE** the district court's judgment and **REMAND** this case for further proceedings consistent with this opinion.

No. 08-5700
*United States v. Carr, Jr.*

**KAREN NELSON MOORE, Circuit Judge, concurring in judgment only.** Because my vote is necessary to enter an order of judgment, I concur with the ultimate judgment to **VACATE** and **REMAND** the case to the district court for further proceedings. I join this judgment reluctantly, however, and solely because adherence to my convictions is impossible in light of this panel's overriding obligation to resolve the case before it. *See United States v. Screws*, 325 U.S. 91, 134 (1945) (Rutledge, J., concurring in judgment).[*] Were I not in a position where this panel was faced with a deadlock, I would adhere to my belief that a remand to the district court for further factual development is neither advisable nor required, and that Judge Rogers unnecessarily avoids addressing the merits of Carr's claim by misconstruing the nature of this court's recent decision in *United States v. See*, 574 F.3d 309 (6th Cir. 2009), and by refusing to acknowledge the clarity of the record on appeal. Voting my convictions, I would reach the merits of Carr's claim, which the parties have presented to us for decision, and hold that the district court erred in denying Carr's motion to suppress. In sum, my concurrence joins Judge Rogers's outcome only of necessity and adopts none of its reasoning. My reasoning follows.

In requiring a remand in light of this court's decision in *United States v. See*, 574 F.3d 309 (6th Cir. 2009)—a case that was decided while the instant appeal was pending—I believe that Judge Rogers elevates an opinion that constituted a straight-forward application of established precedent

---

[*]As Justice Rutledge stated in *Screws*, "My convictions are as I have stated them. Were it possible for me to adhere to them in my vote, and for the Court at the same time to dispose of the cause, I would act accordingly. The Court, however, is divided in opinion. If each member accords his vote to his belief, the case cannot have disposition. Stalemate should not prevail for any reason, however compelling, in a criminal cause or, if avoidable, in any other. . . . Accordingly, in order that disposition may be made of this case, my vote has been cast [contrary to my views]." 325 U.S. at 134.

to one that announced a legal change. *See*, however, did not constitute a change in the law. The standard by which we judge whether a *Terry* stop occurred remains, as it was before, an objective, totality-of-the-circumstances approach. *See See*, 574 F.3d at 313 (citing *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004)). Moreover, *See* did not add additional factors for the district court to consider in determining whether there was a *Terry* stop. Rogers Op. at 4-5. Rather, as cases decided before *See* indicate, the relevance of the position of a police vehicle in relation to the defendant's car in determining whether a *Terry* stop has occurred is not new. *See, e.g.*, *United States v. Jones*, 562 F.3d 768, 772-73 (6th Cir. 2009) ("[B]y blocking in the [car], the officers [in the unmarked vehicle] had communicated to a reasonable person occupying the [car] that he or she was not free to drive away." (citing *United States v. Baldwin*, 114 F. App'x 675, 678 (6th Cir. 2004) (unpublished) and *Brendlin v. California*, 551 U.S. 249 (2007))). Although this court's opinion in *See* could have provided the district court with additional guidance as to whether its findings of fact amounted to a *Terry* stop, such guidance would have been based solely on the factual similarity between *See* and the instant case. By concluding that he "must" remand based on these mere factual similarities, however, Judge Rogers endorses a remand for a new evidentiary hearing each time a panel decides a search and seizure case while a factually similar one is on appeal. This is not the law.

Given my belief that *See* simply applied existing precedent and that the instant case does not otherwise necessitate a remand, I firmly believe that the panel is obligated to address the questions before it: whether there was a *Terry* stop, and, if so, whether that stop was supported by reasonable suspicion. In concluding that the record on appeal contains insufficient information to answer those

questions in light of *See*, Judge Rogers ignores and obfuscates many of the district court's conclusions. First, the district court held that there was no *Terry* stop. In fact, the district court explicitly stated that the type of stop in the instant case was "a citizen encounter with an officer which later became reasonable suspicion to ask the defendant to get of the car, which then ripened into probable cause for an arrest." Dist. Ct. Hr'g Tr. at 59; *see also id.* at 58 ("I find that the officers had a right to approach the vehicle at the car wash. Perhaps they needed no reasonable suspicion or probable cause for an officer to approach as a citizen to ask a question is permissible without implication of the Fourth Amendment."). This "citizen encounter" is synonymous with the "consensual encounter" that Judge Rogers mentions. Rogers Op. at 4.

There are also sufficient findings in the record to allow this panel to determine whether the district court's conclusion that no *Terry* stop occurred was legally correct. *Cf. Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 338 (6th Cir. 2005); *United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 455 (6th Cir. 2004) (remanding where the district court had not yet opined on a "highly fact-bound" issue and there was "limited [appellate] briefing"); *Ford Motor Co. v. Lloyd Design Corp.*, 22 F. App'x 464, 468-69 (6th Cir. 2001) (unpublished) (noting that "the appropriate procedure is to vacate . . . and remand" when the district court "made no findings of fact or conclusions of law" and where the panel could not, "without resorting to speculation[,] determine the basis on which the district court rested its decision" (citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2577)).

A remand is not required to determine whether the police car blocked Carr's vehicle or to ascertain to what extent the police flashed their lights. Instead, these questions bearing on whether

a reasonable person would have felt free to leave are easily answerable with the record on hand. It is clear that the district court credited Officer Carneal's testimony. Dist. Ct. Hr'g Tr. at 58 ("I believe and credit the testimony of Officer Carneal."). And the full transcript of the suppression hearing contains non-contradictory statements from both Carneal and Carr as to where the police car was located and whether Carneal activated the lights. *See id.* at 21, 35. With regard to the position of the vehicles, Carneal testified that the officers "pulled up to the front" of Carr's vehicle in the car-wash bay and that the "headlights hit" Carr's vehicle. *Id.* at 8. When asked whether he blocked Carr's vehicle, Carneal testified that he "pulled up at an angle" in front of Carr "with probably . . . a ten [or twelve] foot gap between" the two and admitted that in order to go around the police vehicle Carr "would have had to do some maneuvering." *Id.* at 21. The record also contains statements addressing the use of police lights. *See id.* at 19, 26, 36. Carneal testified several times that prior to exiting his vehicle, he "flipped" the "blue lights." *Id.* at 19, 20. Carr's testimony did not conflict. *Id.* at 35. Based on the credited testimony and findings, it is unclear what a remand accomplishes other than allowing the panel to avoid application of our precedents previously applied in *See*.

Given the ample evidence in the record, I am compelled to conclude that district court erred in determining that the encounter between Carr and the police amounted only to a "citizen encounter." In fact, the moment that Carneal parked the police vehicle in front of Carr's vehicle and activated the lights, a *Terry* stop began. Given the use of police lights, as well as Carneal's positioning of the police vehicle so that Carr was unable to move from the car-wash bay without "some maneuvering," a reasonable person in Carr's position would not have felt free to leave. *See See*, 574 F.3d at 313 ("Given the fact that Williams blocked See's car with his marked patrol car,

a reasonable person in See's position would not have felt free to leave.'); *cf. id.* at 314 n.4 (noting

that an officer "could have properly sought a consensual encounter without blocking [the driver's]

ability to exit, and such a consensual encounter would not have run afoul of *Terry*").

Having determined that there was a *Terry* stop, our next inquiry is whether that stop was

supported by reasonable suspicion. It plainly was not. Despite finding no *Terry* stop, the district

court indicated that even if there were such a stop, the officers would have had reasonable suspicion

to approach Carr's vehicle. Dist. Ct. Hr'g Tr. at 59. In support of this finding, the district court

noted that the officers perceived an "apparently unoccupied [vehicle] in a car wash for several

minutes . . . with nobody washing the car and no activity apparently going on around the car." *Id.*

The record also indicates that the encounter took place between 9:30 and 10:00 at night, when it was

dark, *id.* at 7, and that the area was known to the police "as a high drug area." *Id.* at 56. As this

court has noted, the time of day and the fact that it was a high-crime area, standing alone, are

insufficient to support a reasonable suspicion that criminal activity is afoot. *See*, 574 F.3d at 314

(citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Caruthers*, 458 F.3d 459, 467-

68 (6th Cir. 2006)).

The remaining factor, that there was a vehicle parked in the bay of a car wash and the police

did not see any activity when they drove past it twice in a time span of two or three minutes is

insufficient to provide reasonable suspicion. The officers were not responding to a particular

complaint or acting on a tip, they did not suspect Carr of a specific crime, they had not seen the car

sitting in the bay "for an extended period of time," and Carr did not attempt to flee upon the officers'

approach. *See*, 574 F.3d at 314. All that the officers knew when they parked in front of Carr's

vehicle and turned on the lights was that there was an occupied vehicle in a car-wash bay and that the person had not exited the car in the two minutes that the officers had observed the vehicle. For all the officers knew, Carr could have exited the vehicle while they were out of sight. Or, Carr could have been searching to find the correct change to operate the machines before getting out of his vehicle. In fact, Officer Carneal testified he had no reason to believe that anything "improper," "illegal," or "wrong" was occurring when the officers decided to approach Carr. Dist. Ct. Hr'g Tr. at 17. Because the encounter between Carr and the police amounted to an unlawful *Terry* stop, the evidence that resulted from the search of Carr's vehicle must be suppressed. *See See*, 574 F.3d at 314 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

In conclusion, I believe that Judge Rogers unnecessarily avoids addressing the merits of Carr's claim. Were I voting my convictions and not by necessity, I would reach the merits and hold that the district court erred in denying Carr's motion to suppress. Unfortunately, however, if I were to vote my beliefs, this case would remain unresolved. Because "[s]talemate should not prevail for any reason, however compelling, in a criminal cause or, if avoidable, in any other," *Screws*, 325 U.S. at 134 (Rutledge, J., concurring in judgment), I cast a concurring vote with Judge Rogers to **VACATE** and **REMAND**. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 553 (2004) (Souter, J., concurring in judgment) ("ordering remand on terms closest to those" that the Justice would prefer in order to give practical effect to the conclusions of the plurality). My view that the police conducted an unreasonable *Terry* stop and that the evidence should be suppressed is more in line with Judge Rogers's view that it is unclear whether a *Terry* stop occurred—reasoning that preserves the remedy of suppression—than Judge Thapar's outright affirmance of the district court's denial of Carr's

No. 08-5700
*United States v. Carr, Jr.*

motion to suppress on the grounds that the exclusionary rule does not apply. *See Connecticut v.*

*Johnson*, 460 U.S. 73, 89-90 (1983) (Stevens, J., concurring in judgment).

No. 08-5700
*United States v. Carr, Jr.*

**AMUL R. THAPAR, District Judge, dissenting.** In my colleagues two very thoughtful opinions, they debate whether or not a *Terry* stop occurred in this case. Because I would affirm the district court whether or not a *Terry* stop occurred, I dissent.

For the purposes of this dissent, I will assume a *Terry* stop occurred here. The next and most important question the court must answer is whether suppression is an appropriate remedy. It is not.

As the Supreme Court has recently said, "suppression is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 129 S. Ct. 695, 698 (2009). "Instead, the question turns on the culpability of the police and the potential exclusion to deter wrongful police conduct." *Id.* This question is critical because suppression is a "judicially created rule . . . 'designated to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* at 699 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). And, suppression has always been a "last resort, not [a] first impulse." *Id.* at 700 (citations omitted).

Thus, once a court determines that a Fourth Amendment violation has occurred, it must go to the next step and determine whether suppressing the evidence that resulted would have a deterrent effect. *Id.* And, only when the Court determines that benefits of deterrence outweigh the costs should a court suppress. *See id.* at 700-01.

Here, it is clear that no good deterrent effect would occur from suppressing the evidence. Indeed, the officers did exactly what society would want them to do.

Officer Carneal testified that at about 10 p.m. they drove by the carwash and noticed a white car in the carwash, which no one was washing. Record on Appeal Volume 1 ("R.O.A. 1") at 7-8. They turned around and came back and saw the vehicle still sitting in the last bay of the carwash.

*Id.* at 8. They could not see if anyone was in the car. *Id.* The officers did not know why it was sitting in the carwash and were worried that someone might have been hurt or injured. *Id.* at 9. Thus, they drove up to the car in their black Explorer. *Id.* at 8. As the officers approached, they flipped on their emergency lights to identify themselves. *Id.* The officers knew this was a high-crime area. *Id.* at 9. Obviously, in such an area, safety dictates that officers identify themselves before approaching someone at night in an unmarked vehicle.

I cannot fault a single thing that the officers did in this instance. Once they approached and saw the drugs, it is obvious that they could arrest the defendant. Thus, the critical facts remain the officers (1) noticing a vehicle in a carwash not being washed, (2) approaching the vehicle to check on the well-being of any occupants, and (3) identifying themselves. Taken together or apart, none of these things is worth deterring by suppression. Indeed, one would be hard pressed to identify what benefit suppression would be in this instance.

Imagine the following scenario: A police officer is driving along the highway and he notices a car on the side of the road. Worried that someone in the car may need help, the officer pulls in behind the car and activates his emergency lights to warn oncoming traffic. He then approaches the car and sees a man seated in the driver's seat with a gun in his hand and someone dying in the seat next to him with a gunshot wound to the head. Is this a *Terry* stop? Yes. *See, e.g., Reid v. Georgia*, 448 U.S. 438, 440 (1980) (noting that "any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity"). Few, if any, people on a highway feel free to leave when a police car is behind them with their emergency lights activated. *See United States v. Campbell*, 486 F.3d 949, 954 (6th

Cir. 2007) (stating seizure of individual occurs when a reasonable person believes that they are not free to leave); *cf. Brendlin v. California*, 551 U.S. 249, 255 (2007) ("The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief." (internal quotations and citation omitted)). Does the officer have reasonable suspicion that criminal activity is afoot? No. He simply stopped to make sure that the occupants of the vehicle were alright. Under either decision by my colleagues, the trial court would have to suppress. What societal interest does suppression promote in that instance?

What is the difference here? Nothing. Officers approached to check on the well-being of the occupants of the car in the carwash. They identified themselves before approaching. Again, all things they should have done. Yet, we are now going to deter officers from doing exactly that. We are going to say that if you approach to help someone, we will suppress the evidence if you happen upon activity of a crime.

The exclusionary rule has always been intended to curb police misconduct. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 13 (1968) (stating purpose of the exclusionary rule is to deter "lawless police conduct"); *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part) (stating that deterrent value of exclusionary rule is most effective when "official conduct [is] flagrantly abusive of Fourth Amendment rights"). Thus, in order for the exclusionary rule to apply, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Hering*, 129 S. Ct. at 702.

The record simply contains no evidence of police misconduct here. Thus, I would affirm.