**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0491n.06

No. 09-1072

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 09, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RICHARD LAYNE LABELLE, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: BOGGS and NORRIS, Circuit Judges, ADAMS, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** After his arrest for possession of child pornography, defendant Richard Layne LaBelle filed two motions seeking to suppress evidence seized from his duffel bag and his residence on May 1, 2007, and May 10, 2007, respectively. The district court denied both motions. Subsequently, defendant entered into a plea agreement that preserved his right to appeal the district court's decisions. Pursuant to that agreement, defendant pleaded guilty to Count One of a two-count indictment charging him with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). [1] Defendant's appeal is now before us. We affirm.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern district of Ohio, sitting by designation.

[1]As part of the plea agreement, the United States dismissed Count Two of the indictment.

**I.**

At approximately 2:00 a.m. on May 1, 2007, Auburn Hills, Michigan police officer Todd Raskin was on patrol in an industrial area along Walton Boulevard, on the west side of Interstate Highway I-75. He observed defendant, on foot, in the rain, wearing no jacket or other rain gear, and carrying a duffel bag. Because Officer Raskin knew the area to be prone to criminal activity and typically free of pedestrian traffic at night, he exited his police cruiser and approached defendant to inquire about defendant's identity and reason for his presence in that part of town at that time of night. As Officer Raskin approached, defendant paused to talk.

In response to Officer Raskins' questions, defendant claimed that he was heading home from Pontiac, Michigan, and that he was on foot because he did not have a car or a valid driver's license. He also informed Officer Raskin that the duffel bag contained clothing but declined to allow inspection of its contents. After this exchange, which lasted approximately three minutes, defendant departed and Officer Raskin returned to his cruiser.

Using the name and date of birth defendant had provided during the investigatory stop, Officer Raskin conducted multiple database searches. Those searches returned no matching records. Concluding that defendant had provided false information about his identity, Officer Raskin decided to investigate further. He enlisted the assistance of Sergeant Ryan Gagnon, who located defendant on the east side of I-75. Defendant had crossed eight lanes of highway on foot and was scurrying on his hands and knees in waist-high vegetation up an embankment on the east side of I-75 when Sergeant Gagnon spotted him. Sergeant Gagnon caught and detained defendant after defendant ignored orders to stop.

By this time, defendant was no longer carrying the duffel bag. In response to Sergeant Gagnon's inquiry about the bag, defendant stated, "it's down there"– referring to the highway–and added, "I don't know." Sergeant Gagnon located a duffel bag on the western embankment of I-75. Officer Raskin identified it as the one that defendant was carrying during the initial investigatory stop.

Officer Raskin searched the contents of the bag and discovered a notebook and binder which contained numerous pornographic images, some of which appeared to involve children. Based upon his initial search of the contents, he seized the bag for a more detailed investigation. The contents were subsequently examined by officers trained to investigate sexual crimes against children.

Auburn Hills Police Detective Ron Tuski assumed the subsequent investigation of the case. His investigation revealed that defendant had prior convictions for possession of child sexually abusive material and the use of a computer to commit a crime. Detective Tuski then undertook a more detailed search of the contents of the notebook and the binder found in defendant's duffel bag.

Detective Tuski discovered that the notebook contained, among other pornographic images, two photographs of pre-pubescent females posing nude with nude adult females. Next to one of the photographs was a sexually graphic, handwritten note. The binder contained, among other items, advertisement images of pre-pubescent children to which images of adult genitalia and adult breasts had been affixed. Also included in the binder were newspaper articles about attempted and completed child abductions; newspaper photographs of elementary, middle school, and high school

children with their names, addresses, and phone numbers written in the margins;[2] and information

and instructions for creating video-DVD images.

Upon completing his investigation, Detective Tuski prepared an affidavit explaining the

grounds for probable cause to search defendant's residence for evidence that defendant possessed

or produced child sexually abusive material. A magistrate found probable cause and issued a search

warrant. The search warrant was executed at defendant's residence on May 10, 2007. Evidence

seized from that search included child pornography in digital and print form.

A federal grand jury indicted defendant on two counts of possession of child pornography.

During pre-trial proceedings, defendant filed two motions to suppress evidence. The first sought

suppression of evidence seized from the warrantless search of his duffel bag on May 1, 2007. The

second sought suppression of evidence seized from his residence pursuant to the execution of the

search warrant on May 10, 2007.

After a hearing on the first motion, the United States District Court for the Eastern District

of Michigan ruled that the contents of the duffel bag were admissible and denied the motion on May

2, 2008. The district court subsequently denied the second motion on August 13, 2008, without a

hearing.[3] Defendant appeals both rulings on the ground that the searches and seizures violated his

Fourth Amendment rights.

---

[2]Some of the clippings had been cut to remove the heads of the subjects. The heads had then been pasted on separate pages and attached to pornographic adult images.

[3]Thereafter, defendant entered into a conditional plea agreement. He pleaded guilty to one count of possession of child pornography and was sentenced to the statutory mandatory minimum of 120 months of imprisonment.

**II.**

We review the district court's factual findings for clear error and its application of law *de novo*. *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003). In reviewing a district court's denial of a motion to suppress, we consider the evidence in a light most favorable to the government. *Id*.

1.  Motion to Suppress Evidence Seized from Defendant's Duffel Bag

The Fourth Amendment protects citizens against unreasonable searches and seizures by the government. U.S. Const. amend. IV. However, to assert protection against unreasonable search and seizure under the Fourth Amendment, a defendant must show that he possessed a "legitimate expectation of privacy in the invaded [property]." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A defendant forfeits any legitimate expectation of privacy he might have in a property when he abandons that property. *Abel v. United States*, 362 U.S. 217, 240-41 (1960). "[T]he notion of 'abandonment' turns upon whether a person can claim a continuing, legitimate expectation of privacy in the item at issue." *United States v. Robinson*, 390 F.3d 853, 873 (6th Cir. 2004). Whether a defendant abandoned the invaded property is a question of intent and may be inferred from the defendant's statements, conduct, and other objective indicia. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

In denying defendant's motion to suppress evidence seized from his duffel bag, the district court determined that his Fourth Amendment rights were not infringed. Although defendant raised no challenge in the proceedings below to the constitutionality of his initial encounter with Officer Raskin (nor does he do so in this appeal), the district court nevertheless first examined the propriety

of that encounter and concluded that it passed constitutional muster.[4] The district court then assessed the legality of the search and seizure of the duffel bag. Relying on two abandonment cases from this circuit, *United States v. Collis*, 766 F.2d 219 (6th Cir. 1985), and *United States v. Oswald*, 783 F.2d 663 (6th Cir. 1986), the district court found that defendant's act of discarding the duffel bag in a public, wooded area next to the highway before he crossed I-75, coupled with his effort to evade police detection, indicated an intent to abandon the bag.

On appeal, defendant concedes that Officer Raskin committed no constitutional violation by approaching him and initiating a discussion. He contends, however, that the search and seizure of his duffel bag was unconstitutional. Defendant's argument before the district court was framed as a fairly broad assertion: that the police had no basis for seizing and searching his duffel bag. On appeal, he offers more particularized support for this broad assertion. In his view, once the initial encounter terminated, law enforcement officials had no legal grounds to continue investigating him, surveilling his activities, or stopping him a second time.[5] Stated differently, defendant's position is that Officer Raskin was required to accept, without question, defendant's proffered identity and explanation for his presence, at 2:00 a.m., on foot, carrying a duffel bag, in an industrial area of the city that had generated some criminal activity. As the sole basis for this contention, defendant relies on case law which states that giving law enforcement officials a false name is not a criminal offense

---

[4]The district court also observed that even if the initial contact had been unreasonable, it did not lead to the seizure of the duffel bag because at the conclusion of the encounter, "[d]efendant was completely free to go, and indeed left with the duffel bag in his possession." *United States v. LaBelle*, No. 07-CR-2068, 2008 WL 1931875, at *3 (E.D. Mich. May 2, 2008).

[5]On appeal, defendant does not challenge the district court's determination that he abandoned his duffel bag as a matter of law.

under Michigan law and that one cannot be compelled to answer a law enforcement officer's questions.[6]

Defendant was well within his rights to refuse consent to search his duffel bag during the initial stop. After defendant refused consent to search his bag, Officer Raskin made no effort to detain him and the interview ended. However, Officer Raskin was not precluded from conducting follow-up investigation of the name that defendant provided, nor was he required to cease surveillance of defendant's activities.

Almost immediately after the interview ended, defendant discarded the duffel bag in a wooded area on the west side of Interstate 75, crossed the eight-lane highway, and attempted to evade further contact with the police even when ordered to stop. On these facts, neither the search

---

[6]At oral argument, defendant's counsel also directed us to *United States v. See*, 574 F.3d 309 (6th Cir. 2009), as support for his claim that Officer Raskin had no legal basis for searching and seizing the duffel bag. In so doing, he argues that Officer Raskin lacked authority to conduct an investigatory stop. In *See*, we found that a law enforcement officer effected an unlawful *Terry* stop by using his police cruiser to block a suspect's vehicle in a parking lot located in a high-crime area late at night while he determined the identity of the occupants and maintained the status quo because the "contextual factors of time and the high-crime status of the area," together with factors that are dissimilar to this case, failed to establish reasonable suspicion of criminal activity. *Id.* at 313-14. *See* is unavailing for several reasons. First, as noted above, defendant has conceded that there was nothing improper about Officer Raskin's initial encounter with defendant. Second, defendant failed to argue below that the initial encounter constituted an improper investigatory stop and has therefore waived that argument on appeal. *See United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994) ("Constitutional objections 'that appear for the first time on appeal are conclusively deemed to be waived, with the effect that [the appellate court is] deprived of jurisdiction.'") (quoting *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir. 1990)). Third, although the district court treated the initial interaction as a *Terry* stop, which would require a reasonable suspicion of articulable criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 21 (1968), Officer Raskin's initial contact with defendant is more appropriately characterized as a consensual encounter in that Officer Raskin in no way constrained defendant's movements and the contact consisted merely of asking a series of questions, first concerning defendant's well-being, then concerning his activities and identity. *See United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (law enforcement officer's inquiry about activities and identity does not implicate the Fourth Amendment) (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185 (2004)). Unlike the occupants of the blocked automobile in *See*, a reasonable person in defendant's position would have felt free to leave. Indeed, the interview terminated and defendant walked away shortly after he refused access to his duffel bag. Because the consensual encounter initiated by Officer Raskin never ripened into an investigatory *Terry* stop, the reasonable suspicion inquiry is not triggered, and, therefore, the factors identified in *See* as insufficient to establish reasonable suspicion are extraneous to the issues before us.

and seizure of the duffel bag nor the stop of defendant made by Officer Gagnon at Officer Raskin's behest was constitutionally infirm.[7] Accordingly, the district court correctly denied the motion to suppress evidence seized from defendant's duffel bag on May 1, 2007.

2. Motion to Suppress Evidence Seized from Defendant's Residence Pursuant to Execution of Search Warrant

The Fourth Amendment requires that a search warrant be supported by an affidavit establishing probable cause and that the affidavit set forth with particularity a description of the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. To establish probable cause, the affidavit must contain "particularized facts demonstrating 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). As we have previously observed, this requires a "'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

On review, issuance of a warrant will be sustained where the issuing "magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985). In

---

[7]We consider defendant's argument concerning the legality of his detention by Officer Gagnon only as an ancillary factor relating to the officers' investigation and surveillance of defendant and their search and seizure of his duffel bag. To the extent that defendant's argument regarding the lack of legal basis for his detention by Officer Gagnon seeks to assert a separate and independent ground for appeal, we note that he did not raise this issue below. It is therefore not properly before us and we do not address it. *See Scarborough*, 43 F.3d at 1025 (failure to raise constitutional objection below operates as waiver of objection on appeal).

issuing a warrant, the magistrate must have "perform[ed] his neutral and detached function and not serve[d] merely as a rubber stamp for the police." *McPhearson*, 469 F.3d at 524 (internal citations and quotation marks omitted). Nevertheless, reviewing courts are to accord great deference to a magistrate's probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

Here, the district court concluded that the affidavit sworn by Detective Tuski was sufficient to establish probable cause for the search of defendant's residence and the seizure of the evidence therefrom. On appeal, defendant contends that the affidavit was overly broad in its use of "boilerplate" language and that it failed to relate the term "preferential child molester" to defendant in any way. We agree with the district court.

Detective Tuski's affidavit provides an extensive array of particularized facts, thereby meeting the dictates of *McPherson*. First, the affidavit outlines defendant's prior convictions for possession of child sexually abusive material and use of a computer to commit crime. It explains in detail the underlying circumstances leading to those convictions, some of which circumstances bear striking similarity to this action.[8] For example, paragraph four of the affidavit explains that as part of the investigation resulting in the prior criminal convictions, defendant was found in possession of several computer disks and a notebook containing newspaper clippings containing images of children, teenagers, and young adults and pornographic images of adult females. Similarly, in paragraphs seven through nine, the affidavit provides a detailed description of the underlying facts leading to defendant's arrest in this action. The affidavit notes that defendant was

---

[8]Defendant pleaded no contest in 2004 to three counts of possession of child sexually abusive material and three counts of use of a computer to commit crime.

apprehended with a notebook containing a collection of numerous pornographic images, including depictions of nude minor females, and a binder containing images of prepubescent children to which images of adult genitalia had been affixed. The affidavit states that some of the materials in the binder, including newspaper articles with attached pornographic images and vulgar written statements, dated back as far as 2002. The binder also contained instructions on how to create a computer video-DVD.

Second, paragraph ten of the affidavit includes a description of the methods and practices used by "preferential molesters" for maintaining their collections of child pornography. According to the affidavit, the typical pattern of a preferential molester is to keep a collection for years in a neat and orderly manner, storing it in computers, photo albums, binders, dairies, or other similar media and constantly adding to it.

Finally, in paragraph twelve, the affidavit incorporates the information set forth in the previous paragraphs to conclude:

> [t]hat due to the above information and investigation, including but not limited to the previous police reports as documented by the Michigan State Police, that there is sufficient evidence learned that Richard LaBelle has a pattern of illicit behavior involving the Possession and/or Production of Child Sexually Abusive Materials.

Given the description of defendant's prior criminal history involving the possession of child pornography and the use of a computer to commit a crime, the description of the collection of pornography containing images of children found in his duffel bag, the explanation of the patterns and practices used by preferential molesters to maintain their pornographic collections, and the averment by Detective Tuski in paragraph twelve that the facts previously set forth in the affidavit

indicate that defendant has a pattern of illicit behavior involving the possession and/or production of child pornography, defendant's assertion that the affidavit was overly broad or failed to link defendant to the characteristics of a preferential molester lacks merit.

Also lacking merit is defendant's argument that the affidavit's failure to label defendant as a "preferential child molester" renders baseless Detective Tuski's conclusion that defendant was likely to have child pornography in his home. Generating and compiling the contents of the pornographic collection found in defendant's duffel bag required the use of a computer. In addition, the binder containing child pornographic images also contained instructions for using a computer to create a video-DVD. These facts, in addition to defendant's previous convictions for possession of child sexually abusive material and use of a computer to commit a crime and the need for a computer to have a fixed base, make it reasonable to conclude that police would find evidence of child pornography in defendant's residence. Accordingly, the affidavit adequately demonstrates the nexus required between the place to be searched and the evidence sought. *See Carpenter*, 360 F.3d at 594.

We affirm the district court's denial of defendant's motion to suppress evidence seized from his residence on May 10, 2007.

**III.**

The district court's orders denying defendant's motions to suppress are **affirmed.**