**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0116n.06

**No. 09-4366**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 17, 2011
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,              )
                                         )
                                         )   ON APPEAL FROM THE UNITED
v.                                       )   STATES DISTRICT COURT FOR THE
                                         )   SOUTHERN DISTRICT OF OHIO
GEORGE LORENZO DINGESS,                  )
                                         )
    Defendant-Appellant.             )


Before:  MARTIN, BOGGS, and COOK, Circuit Judges.


COOK, Circuit Judge.  After arresting George Dingess, officers discovered a pistol on his person and marijuana in his car.  Dingess moved to suppress this evidence, which he claims authorities procured during an illegal search.  The district court denied Dingess's motion, and Dingess entered a conditional guilty plea to possession of a firearm by a convicted felon.  Dingess now appeals the denial of his motion to suppress.  We affirm.


I.


While patrolling a high-crime area of Columbus, Police Officers Jeremy Phalen and John Narewski observed two men parked in a blue Buick in the common driveway of a duplex.  Having heard a report that a "stocky black male" was selling drugs from a blue Buick at that very address, the officers ran a check on the license tag.  Records revealed that Dingess owned the vehicle.  Phalen

and Narewski then pulled up Dingess's mug shot and arrest record—which included multiple narcotics, weapons, and resisting-arrest charges—and identified Dingess as the driver. Unbeknownst to the officers, Dingess was staying with his girlfriend, who lived in the duplex.

The officers did not immediately initiate contact; instead, they spent approximately twenty minutes conducting an unrelated traffic stop. When the officers returned and observed the occupied Buick still parked in the driveway, they decided to investigate. Phalen and Narewski parked their cruiser on the street, leaving the driveway entrance clear. Phalen approached the driver's door while Narewski approached the passenger's door. According to the officers, both the driver's and the passenger's windows were down. As the officers approached the rear bumper, they smelled burning marijuana; as they moved closer, Phalen observed Dingess holding a marijuana blunt in his right hand. Both officers reported that, before they said anything, Dingess said that he was not doing anything wrong and demanded that the officers move away. Phalen responded that he smelled marijuana and saw Dingess holding a blunt. Dingess threw the blunt toward the lap of his passenger, later identified as Dingess's brother, Drew. According to the officers, Drew raised his hands in the air and said that he would not be a problem.[1] After opening Dingess's door, Phalen advised Dingess he was under arrest. Following a struggle, Phalen tasered Dingess twice. When Dingess fell and his

---

[1]Drew disputes parts of this account. He claims that the windows of the car were up, the police officers initiated contact by knocking on the window, neither brother was smoking marijuana, and Phalen tried to pull Dingess out of the car. He also denies raising his hands and telling the officers that he would not be a problem. Dingess's argument, however, does not rely on these factual discrepancies.

shirt opened, Narewski observed a firearm and yelled "gun!" Other officers that Narewski had radioed arrived and handcuffed Dingess. Upon searching Dingess, police found a loaded nine-millimeter pistol in his waistband. They also discovered a marijuana blunt in the front passenger area of his car.

A grand jury indicted Dingess for possession of a firearm by a convicted felon. Dingess moved to suppress evidence. Following an evidentiary hearing, the district court denied Dingess's motion. Dingess entered a conditional guilty plea to the one-count indictment. He also moved the court to reconsider its denial of his motion to suppress; the district court adhered to its previous ruling. The court sentenced Dingess to fifty-two months' imprisonment and three years of supervised release. Dingess appeals the denial of his motion to suppress.

II.

Dingess claims that the district court improperly denied his motion to suppress because it misconstrued the nature of his encounter with the officers. Police may engage in a warrantless encounter with a citizen under three circumstances: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon reasonable suspicion; and (3) arrests which must be based upon probable cause." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (internal quotation marks and citation omitted). Considering the evidence in the light most favorable to the government, we review the district

court's findings of fact for clear error and its conclusions of law de novo. *United States v. Gross*, 624 F.3d 309, 314 (6th Cir. 2010).

Dingess claims that the district court erred in denying his motion to suppress because the officers engaged in a *Terry* stop without a reasonable, articulable suspicion. Because the evidence suggests that the officers initiated a consensual encounter rather than a *Terry* stop, and the officers had probable cause before the encounter ripened into a *Terry* stop or an arrest, we disagree. In a consensual encounter, "law enforcement officers may ask citizens general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008) (internal quotation marks and citation omitted). "Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity." *Id.* (internal quotation marks and citation omitted). Factors indicating a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Gross*, 624 F.3d at 315 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Prior to detecting the marijuana—at which point the parties do not dispute that probable cause existed—the officers parked their car without blocking Dingess's egress and then approached

Dingess and Drew to initiate conversation. Dingess does not suggest that the officers displayed a weapon, touched him, or communicated with him in any way. *See id.* Instead, he recites a number of other factors that he claims the district court failed to recognize support his position that the officers engaged in a *Terry* stop:

> (1) Mr. Dingess' [sic] vehicle was positioned with only one point of egress. (2) The front of the vehicle was facing a fence and the rear of the vehicle was towards the street. (3) The officers' initial approach was from the rear of Mr. Dingess' [sic] vehicle which was to [sic] only point of egress. (4) The officers were in a marked cruiser and police issued uniforms demonstrating an obvious police authority. (5) The officers simultaneously approached the driver's and passenger side of the vehicle essentially surrounding the occupants. (6) And, the officers were armed.

(citations omitted). But Dingess cites no case law explaining how these factors aid his cause. In fact, while the first three factors bear on Dingess's ability to depart from the driveway, none suggests that the officers actually blocked his egress. *See United States v. Labelle*, 390 F. App'x 539, 542 n.6 (6th Cir. 2010) (characterizing encounter as consensual in part because officer "in no way constrained defendant's movements"); *United States v. See*, 574 F.3d 309, 314 n.4 (6th Cir. 2009) (noting that officer who initiated a *Terry* stop "could have properly sought a consensual encounter without blocking [the defendant's] ability to exit"); *cf. Gross*, 624 F.3d at 315–16 (finding that officer began a *Terry* stop when he blocked the defendant's car); *United States v. Jones*, 562 F.3d 768, 772–73 (6th Cir. 2009) (finding a seizure because a reasonable person would not feel free to

leave once officers had blocked his car).[2] The next three factors suggest only typical police conduct, not activities indicative of a seizure. *See United States v. Williams*, 615 F.3d 657, 664 (6th Cir. 2010) (observing that, without more, the approach of two uniformed officers in a marked police car would not suffice to make a reasonable defendant feel as though he could not leave). Because a reasonable person would believe himself free to leave under these circumstances, the district court correctly classified the officers' initial approach as a consensual encounter. *See Davis*, 514 F.3d at 607. And, because the officers smelled burnt marijuana emanating from Dingess's car and saw the defendant holding marijuana—establishing probable cause—*before* this encounter ripened into a seizure, the district court properly denied the motion to suppress. *See United States v. Ivey*, 307 F. App'x 941, 942–43 (6th Cir. 2009) (per curiam) (finding no Fourth Amendment violation where officer's plain-view discovery of marijuana on defendant provided probable cause for defendant's arrest and vehicle search); *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("[A]n officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search.").

---

[2]Dingess suggests in the statement of issues presented that the officers did not initiate a consensual encounter because they entered uninvited onto private property. Because Dingess fails to pursue this line of reasoning in his brief, we deem it forfeited. *See Barakat v. Holder*, 621 F.3d 398, 406 n.1 (6th Cir. 2010). Even if considered, this argument lacks merit in light of the open access to the common driveway and the officers' unobstructed view of Dingess's activities. *See United States v. Smith*, 783 F.2d 648, 651–52 (6th Cir. 1986) (finding officers did not violate defendant's reasonable expectation of privacy by entering his driveway and proceeding to his residence).

III.


For the above reasons, we affirm the denial of Dingess's motion to suppress.