RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                                      _Plaintiff-Appellee,_

       _v._

KARL B. SEE,

                                      _Defendant-Appellant._

No. 08-3484

> Appeal from the United States District Court
> for the Northern District of Ohio at Cleveland.
> No. 07-00367—Dan A. Polster, District Judge.

Argued: June 17, 2009

Decided and Filed: July 24, 2009

Before: MOORE and GILMAN, Circuit Judges; PHILLIPS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jonathan P. Witmer-Rich, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Robert F. Corts, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jonathan P. Witmer-Rich, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Robert F. Corts, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

     MOORE, J., delivered the opinion of the court, in which GILMAN, J. and PHILLIPS, D. J., joined. GILMAN, J., (p. 9) delivered a separate concurring opinion.

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  On April 22, 2007, an officer working for the Cuyahoga Metropolitan Housing Authority ("CMHA") noticed defendant-appellant Karl See and two companions sitting in a parked car outside a CMHA property.  The officer parked his vehicle in front of See's car so that See could not depart and approached See.  As a result of the ensuing encounter, the officer searched See's car and found a firearm with no serial number under the driver's seat of See's car.  The officer arrested See, and See was charged with possession of a firearm from which the serial number had been removed.  See filed a motion to suppress.  After the district court denied this motion, See entered a conditional guilty plea and was sentenced to two years of probation, with six months of home confinement.  On appeal, See argues that the district court erred when it denied his motion to suppress.  We conclude that the initial *Terry* stop was not supported by reasonable suspicion, **REVERSE** the district court's denial of See's motion to suppress, and **REMAND** for proceedings consistent with this opinion.

## I.  FACTS AND PROCEDURE

On April 22, 2007, at about 4:30 a.m., See and two other men were sitting in See's car which See had parked at Cedar Estates, a public-housing complex in Cleveland, Ohio.  As the men sat in the car, CMHA Patrol Officer Eric Williams[1] approached and parked his patrol car in front of See's vehicle so that See was unable to drive away.  As a result of the interaction that followed, Williams searched See's car and found a firearm under the driver's seat.  Williams arrested See, who subsequently pleaded guilty to possession of a firearm from which the serial number had been removed, in violation of 18 U.S.C. § 922(k).

---

[1]Williams is a patrol officer with the CMHA Police Division.  He works for the CMHA rather than for the city, but CMHA officers have full arrest powers within Cleveland.  Neither party suggests that the fact that Williams was not a police officer affects our analysis.

At the suppression hearing, Williams testified that Cedar Estates is a high-crime area and that before he began his shift on April 22, due to a series of recent robberies in the area, he was instructed to pay "special attention" to the area and to remain alert for "[l]oud music from vehicles, loud music from the apartment building, persons loitering, the areas of drug related activity, suspicious person, persons, that is loitering that are not really residents or visiting residents in that area." Suppression Hr'g Tr. at 9-11. At about 4:30 a.m., after responding to a disturbance call in a different part of Cedar Estates, Williams began a routine patrol of Cedar Estates that included the parking lot where See was parked. Williams's attention was drawn to See's car because Williams saw three men sitting in an unlit car that was backed into a parking space in a dimly lit part of the parking lot farther from the building than other vacant spots.[2] Although Williams did not testify that the lack of a license plate initially drew his attention to the car, at some point, Williams noticed that See's car did not have a front license plate. After See was arrested, Williams checked the rear of See's car, which revealed that See's car had valid temporary tags which are displayed only at the rear of the car.

After noticing See's car, Williams pulled his patrol car in front of See's car and parked the patrol car in front of See's car so that See could not move his vehicle. The encounter that followed led to the search of See's car during which Williams found a firearm underneath the driver's seat and arrested See. Williams's and See's descriptions of what happened after Williams parked the patrol car in front of See's car differ greatly. However, both parties agree that Williams initiated a *Terry* stop when he parked his patrol car in front of See's car, preventing See from moving his vehicle. Because we conclude that this *Terry* stop was not supported by reasonable suspicion, we have no occasion to consider the events that followed.

---

[2]See testified that he was at Cedar Estates because he had arranged to meet with Tarajuawanna Crowell ("Crowell"), a woman he knew and with whom he was planning to spend the night. See stated that the two men in the car had been with him at a bar and that he was going to let them use his car while he spent the rest of the night at Cedar Estates. When See arrived at Cedar Estates, he backed his car into a parking space on the side of the lot closest to the street, parked his car, and asked his friends to wait while he went to make sure that Crowell was home. Crowell was not home, and See returned to his car and decided to wait in his car for a few minutes to see if she arrived. Shortly after he returned to his car, Williams's patrol car pulled up and parked in front of See's car, blocking in See's car.

After his arrest, See was indicted for possessing a firearm from which the serial number had been removed, in violation of 18 U.S.C. § 922(k).  See filed a motion to suppress the evidence seized from his car on the ground that the police did not have probable cause or reasonable suspicion to order him out of his car and handcuff him based solely on an allegedly furtive movement.  See filed a supplemental brief in support of his motion to suppress arguing that the illegal seizure began at the moment that Williams parked his patrol car blocking See's car from exiting.

After a suppression hearing, the district court made findings of fact and denied See's motion to suppress.  The district court found that Williams was a CMHA officer assigned to patrol Cedar Estates, a public-housing complex that "has a reputation for illicit drug activity, domestic disturbances, robberies and assaults."  Record on Appeal ("ROA") at 79-80 (Dist. Ct. Op. and Order at 1-2).  The district court noted that because of a series of robberies in the area, Williams had been directed to pay "special attention" to non-residents loitering at Cedar Estates.  ROA at 80 (Dist. Ct. Op. and Order at 2).  The district court found that, on April 22, 2007, Williams was conducting a routine patrol of Cedar Estates.  The district court stated that See's car drew Williams's attention because Williams had been instructed to pay special attention to loiterers; "the car was parked in a dimly lit area of the lot away from the building, next to the street, with no interior light on" at 4:30 a.m. in a high-crime area; and, "as Officer Williams approached the Chevy, he noticed that there was no license plate on the front of it."  *Id.*

The district court concluded that "the blocking of [See's car] to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless *Terry* seizure."  ROA at 85 (Dist. Ct. Op. and Order at 7).  The district court explained that Williams had reasonable suspicion to conduct a *Terry* stop because Williams had been instructed to pay careful attention to loiterers, the car was located in a high-crime area, it was 4:30 a.m., and the men were sitting in an unlit car in a dimly lit parking spot away from the building.  The district court denied See's motion to suppress.

After his motion to suppress was denied, See entered a conditional guilty plea. At See's sentencing hearing, the district court concluded that See's base offense level was 12 but that it would be reduced to 10 because of a two-level adjustment for acceptance of responsibility and that See was in criminal history category I. Therefore, See's guidelines sentencing range was 6 to 12 months. The district court sentenced See to two years of probation, with the first six months to be served as home confinement with electronic monitoring. On appeal See argues that Williams initiated a *Terry* stop that was not supported by reasonable suspicion when Williams parked his patrol car in front of See's vehicle so that See could not leave.

## II. ANALYSIS

### A. Standard of Review

"When reviewing a district court's decision on a motion to suppress, we use a mixed standard of review: we review findings of fact for clear error and conclusions of law de novo." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). "We review the evidence in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted).

### B. The *Terry* Stop

We agree with the district court's finding that "the blocking of [See's car] to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless *Terry* seizure."[3] ROA at 85 (Dist. Ct. Op. and Order at 7). We have explained that "[a] consensual encounter can ripen into a seizure if in light of all of the circumstances, [ ] a reasonable person [would] have believed that he or she was not free to walk away." *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) (internal quotation marks omitted). Given the fact that Williams blocked See's car with his marked patrol car, a reasonable person in See's position would not have felt free to leave.

---

[3]The parties do not dispute that a *Terry* stop began when Williams parked his patrol car in front of See's car.

We have explained the two-part analysis used to determine the constitutionality of a *Terry* stop as follows:

> First, we determine whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion. We examine the totality of the circumstances in order to determine the reasonableness of the investigatory stop. We may take into consideration the crime level of the area as a "contextual consideration[ ]." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).
>
> ***
>
> Second, we examine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances. Thus, we must determine (1) if the detention was sufficiently limited in time and (2) if the investigative means used the least intrusive means reasonably available.

*Davis*, 514 F.3d at 608 (internal quotation marks omitted).

We conclude that this *Terry* stop was not supported by reasonable suspicion. The district court listed the following reasons to support its finding that Williams had reasonable suspicion: (1) it was 4:30 a.m.; (2) the men were parked in a high-crime area; (3) before beginning his shift, Williams had been instructed to pay special attention to non-resident loiterers because of a recent increase in robberies; (4) there were three men in the car; (5) the car's interior light was off; (6) the car was parked away from the apartment building in a dim portion of the lot; and (7) the car did not have a front license plate. Williams's testimony does not provide any additional justifications. Although the fact that the encounter occurred in a high-crime area is relevant, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *see also United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006). Similarly, the time of day is relevant, but the fact that it was very early in the morning does not alone provide reasonable suspicion. *Caruthers*, 458 F.3d at 467-68. The first three factors cited by the district court are context-based

factors that would have pertained to anyone in the parking lot at that time and should not be given undue weight.

Nor did the remaining factors provide Williams with reasonable suspicion to conduct a *Terry* search (although he could, of course, have pursued a consensual encounter with the occupants of the car). At the time that he parked his patrol car in front of See's car, Williams was not responding to a complaint, he did not suspect the men of a specific crime, he had not seen the men sitting in the car for an extended period of time, he was not acting on a tip, he had not seen the men do anything suspicious, and the men did not try to flee upon seeing Williams approach. Even if we assume that Williams noticed that the car did not have a front license plate before he parked in front of See's car, this fact does not provide reasonable suspicion because, as Williams explained, temporary tags are issued for only the back of the car. Accordingly, the fact that the car did not have a front license plate did not indicate a traffic infraction, and Williams and the government never explain how the lack of a front license plate would otherwise raise reasonable suspicion. Apart from the contextual factors of time and the high-crime status of the area, all that Williams knew at the time he parked his car was that there were three men in an unlit car in the parking lot of a housing complex and that they had not chosen to park in one of the spots closer to the building. Considering the totality of the circumstances, Williams did not have reasonable suspicion that criminal activity was occurring, and the *Terry* stop was therefore improper.

The initial *Terry* stop was unlawful, and the evidence that resulted from the subsequent search, including the bullets and the firearm, must be suppressed as the fruit of the poisonous tree.[4] *Wong Sun v. United States*, 371 U.S. 471 (1963). The seizure of the firearm and bullets was a direct result of the initial, unlawful *Terry* stop; if Williams had not parked his patrol car in front of See's vehicle, the events leading up to the search would not have occurred, and Williams would not have searched See's car and found the bullets or the firearm. Nor does it appear that an exception to fruits

---

[4]As we have noted, however, Williams could have properly sought a consensual encounter without blocking See's ability to exit, and such a consensual encounter would not have run afoul of *Terry*. Of course, See could have refused to consent to any request for a search.

analysis such as the independent-source rule or inevitable-discovery doctrine applies to make suppression unwarranted. *United States v. Davis*, 430 F.3d 345, 358 (6th Cir. 2005) (citing *Murray v. United States*, 487 U.S. 533, 537 (1988), and *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)). Accordingly, the district court erred when it denied See's motion to suppress.

## III.  CONCLUSION

Because we conclude that the initial *Terry* stop was not supported by reasonable suspicion, we **REVERSE** the district court's denial of See's motion to suppress and **REMAND** for proceedings consistent with this opinion.

---

**CONCURRENCE**

---

RONALD LEE GILMAN, Circuit Judge, concurring.  I concur in the lead opinion, but write separately to emphasize my view that this is an extremely close case. I believe that the totality of the circumstances would have provided Officer Williams with reasonable suspicion to conduct a *Terry* stop if, for example, Officer Williams had been responding to a complaint, if he had acted on a tip, if he had seen the men doing anything potentially criminal, or if the men had tried to flee as Williams approached.

But because Officer Williams observed the men only for a moment before blocking their exit and had not seen them do anything other than sitting in See's vehicle, I cannot say that there were "articulable facts that criminal activity 'may be afoot,'" *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)), or that the officer had anything more than an "ill-defined hunch[]." *See United States v. Urrieta*, 520 F.3d 569, 578 (6th Cir. 2008).  Officer Williams had every right to investigate further, but he should have simply parked his patrol car alongside See's vehicle to carry out the investigation in a consensual manner.  Instead, he parked his patrol car in such a way so as to block in See's vehicle, thus transforming the encounter into a *Terry* stop.  I therefore concur, although barely so, in the conclusion that the stop was not supported by reasonable suspicion.