RONALD LEE GILMAN, Circuit Judge,
concurring in part and dissenting in part.
The majority has concluded that Officer Hagler is entitled to qualified immunity on all of O’Malley’s claims. I agree with the majority that Officer Hagler is entitled to qualified immunity on O’Malley’s claim of excessive force. And I also agree that Officer Hagler is entitled to qualified immunity with regard to his initial interaction with O’Malley, but for different reasons than those set forth by the majority. But I disagree with the majority’s ruling that Officer Hagler is entitled to qualified immunity as a matter of law for detaining and handcuffing O’Malley. I therefore respectfully dissent on that issue.
A. Officer Hagler’s initial interaction with O’Malley
The majority concludes that Officer Hagler is entitled to qualified immunity with regard to his initial interaction with O’Malley on the basis that the interaction was a consensual encounter not subject to the protections of the Fourth Amendment. It also concludes that even if Officer Hagler’s actions were deemed to constitute a seizure, the seizure would have been a justified investigatory stop.
As set forth below, I would hold that O’Malley was in fact seized when Officer Hagler pulled his police vehicle into the driveway behind O’Malley’s Chevrolet Tahoe, and that this seizure was not supported by a reasonable suspicion of criminal wrongdoing that would justify an investigatory stop. Nevertheless, I agree that Officer Hagler is entitled to qualified immunity regarding this interaction because the law was not clearly established that Officer Hagler’s actions constituted a seizure at the time the events in this case took place.

1. Unreasonable seizure

The Fourth Amendment guarantees that the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... ” “These safeguards of the Fourth Amendment, with respect to police/citizen contact, vest only after a citizen has been seized.” Smoak v. Hall, 460 F.3d 768, 778 (6th Cir.2006) (brackets and internal quotation marks omitted). A seizure occurs when, “in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not fi*ee to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
*673 In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court created an exception to the general Fourth Amendment requirement that a seizure must be based on probable cause. The Court held that police officers are permitted to conduct a brief investigatory stop “where a police officer observes unusual conduct which leads him reasonably to conclude ... that criminal activity may be afoot.” Id. at 30, 88 S.Ct. 1868. Such a stop is justified based on the lower threshold of reasonable suspicion rather than on probable cause. Id.
“To justify a brief, investigatory stop under Terry v. Ohio, an officer must point to specific, articulable facts that give rise to a reasonable suspicion that the suspect was engaged in criminal activity.” United States v. Gross, No. 08-4051 (6th Cir. June 15, 2011), amending 624 F.3d 309, 315 (6th Cir.2010) (internal quotation marks omitted). An officer must possess a “particularized and objective basis for suspecting the particular person ... of criminal activity.” Smoak, 460 F.3d at 778-79 (ellipses and internal quotation marks omitted). The officer “must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted).
A court examines the totality of the circumstances when determining whether reasonable suspicion existed to justify a Terry stop. Smoak, 460 F.3d at 779. The reasonableness of a stop is determined by two factors: “(1) whether there was a proper basis for the stop ...; and (2) whether the degree of intrusion into the suspect’s personal security was reasonably related in scope to the situation at hand.... ” Id. (internal quotation marks omitted). “[T]he greater the degree of intrusion during a stop, the more solid must be the officer’s suspicion that the stopped individual is guilty of wrongdoing.” Id.
In United States v. See, 574 F.3d 309, 313 (6th Cir.2009), this court held that “the [officer’s] blocking of See’s car to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless Terry seizure.” Id. (internal quotation marks and original brackets omitted). The police officer in See “approached and parked his patrol car in front of See’s vehicle so that See was unable to drive away.” Id. at 311. This court reached the same conclusion in Gross, 624 F.3d at 315-16, which involved the same police officer as in the See case. Id. (relying on See to hold that the officer conducted a Terry stop when he pulled his patrol vehicle directly behind Gross’s car, thereby blocking the car in the parking space).
In the present case, Officer Hagler pulled his vehicle into the driveway directly behind O’Malley’s Tahoe, preventing O’Malley from exiting the driveway in his vehicle. The record does not clearly reflect whether O’Malley was already out of his vehicle when Officer Hagler pulled into the driveway. But whether O’Malley was still inside the Tahoe or had just exited the Tahoe when Officer Hagler pulled into the driveway makes no legal difference. In either case, O’Malley would have been unable to drive away from the house in his vehicle. Just like the defendants in See and Gross, who were unable to move their vehicles once the patrol cars had blocked them in, a reasonable person in O’Malley’s position would not have felt free to leave while his Tahoe was blocked in the driveway.
The majority disagrees, concluding that O’Malley not only reasonably thought he was free to leave his vehicle at the time of the alleged seizure, but in fact had left it and was walking away. Also, *674 parking behind a vehicle in a driveway does not inherently send a message of seizure because it is how driveways are routinely used.
(Maj. Op. at 669) The majority assumes as a fact that O’Malley was outside of his Tahoe when Officer Hagler pulled into the driveway to support its conclusion and distinguish this case from See and Gross. But the record does not definitively reflect whether O’Malley was already outside of his Tahoe before Officer Hagler pulled into the driveway. Moreover, I believe that the proper inquiry is not whether O’Malley felt free to leave his Tahoe, but rather whether he felt free to leave the scene generally. This court held that the defendants had been seized in both See and Gross because they were unable to move their vehicles, not because they were physically unable to open their car doors and walk out. Once Officer Hagler pulled in behind the Tahoe and started questioning O’Malley, a reasonable person in O’Malley’s position would no longer have felt free to leave. He was therefore seized for purposes of the Fourth Amendment.
The majority also states in a footnote that O’Malley has failed to provide any evidence about the “width of the driveway.” (Maj. Op. at 669 n. 4) True enough, O’Malley did not testify at his deposition about the driveway’s width. But he did say that Officer Hagler’s car was parked about 8 to 10 feet behind his Tahoe, which he elsewhere characterized as “right behind my vehicle.” This provides sufficient evidence to conclude that O’Malley’s Tahoe was blocked in by Officer Hagler’s vehicle and that O’Malley was not free to leave the scene in his Tahoe. See Blebz v. Gribble, 641 F.3d 743, 750 (6th Cir.2011) (noting that one of the questions a court must ask in a qualified-immunity analysis is, “[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right” (internal quotation marks omitted)).
The majority cites United States v. Thomas, 430 F.3d 274 (6th Cir.2005), as additional support for its conclusion that the interaction between O’Malley and Officer Hagler was a consensual encounter. Thomas involved a “knock and talk” encounter at the primary entrance to the house in which Thomas was living. There, this court concluded that the officers’ conduct did not rise to the level of a “constructive entry” into the defendant’s residence because “Thomas responded to a simple knock and request, not an order to emerge or [to] the threat of firearms.” Id. at 278. In distinguishing Thomas from a case on which Thomas relied, the court noted that “the rear deck [in Thomas’s house] was adjacent to the driveway and served as the primary entrance to [the] home. [In the other case], by contrast, the rear deck was not a place such as a driveway, with ready access to visitors.” Id. at 280 (internal quotation marks omitted).
The majority seizes upon this language as support for its statement that “ ‘driveway[s]’ provide ‘ready access to visitors’ and are therefore open to consensual encounters between citizens and police.” (Maj. Op. at 669) But this conclusion does not flow from this court’s analysis in Thomas. There, the court was discussing why the encounter on the rear deck was consensual (i.e., because the rear deck was near a driveway) and was not analyzing an actual encounter in a driveway, much less a situation of one car blocking another. I therefore question the majority’s reliance on Thomas to support its conclusion that O’Malley’s interaction with Officer Hagler, which occurred in a driveway, was consensual.
Because I would hold that Officer Hagler seized O’Malley, the next step is to determine whether that seizure was based *675 on a reasonable suspicion of criminal activity. Officer Hagler argues that he had reasonable suspicion to stop the Tahoe because it appeared to be a Michigan State Police vehicle that did not have a municipal license plate. He asserts that what he observed while following the Tahoe led him to believe that its driver was unlawfully representing himself as a police officer in violation of Michigan Compiled Laws § 750.215.
Section 750.215 provides that an “individual who is not a peace officer ... shall not do any of the following: [ (1) ] [perform the duties of a peace officer ...; [ (2) ] [represent to another person that he or she is a peace officer ... for any unlawful purpose; [and (3) ] [represent to another person that he or she is a peace officer ... with the intent to compel the person to do or refrain from doing any act against his or her will.” To violate this provision, a person must do more than falsely assume to be a peace officer. Rather, a person must “not only assume[ ] to be [a peace officer] but act[ ] as such, or ... falsely take[ ] it upon himself or herself to act or officiate in any office or place of authority.” 3 Gillespie Mich.Crim. L. & Proc.2d § 78:1; see also People v. Cronin, 80 Mich. 646, 45 N.W. 479, 480 (1890) (interpreting a prior but similar Michigan impersonation statute, holding that “[t]he section does not attempt to punish any person for falsely assuming to be any of the officers named in the section, but for assuming and taking upon himself ... to act or officiate in any office or place of authority”).
Officer Hagler observed O’Malley driving the Tahoe. At no point while he was following O’Malley did Officer Hagler see O’Malley engage in any act that would constitute a violation of § 750.215. He also called the Michigan State Police desk officer to ask whether the Michigan State Police had a vehicle in its fleet that matched his description of the Tahoe. The desk officer responded that the Michigan State Police did not own such a vehicle. Nor did Officer Hagler observe O’Malley commit any traffic violations. So at no time prior to pulling into the driveway behind O’Malley did Officer Hagler have reasonable suspicion to believe the Tahoe’s driver was violating the law.
I therefore conclude that Officer Hagler’s decision to pull in behind the Tahoe was not a justifiable Terry stop. See Gross, 624 F.3d at 315 (concluding that the officer did not have reasonable suspicion to conduct a Terry stop by using his police vehicle to block the suspect’s car in a parking lot where, “at the time [he] parked his police car behind the vehicle in which [Gross] was sitting, [the officer] had already observed that the vehicle was legally parked and, based on the check of an electronic database, knew that there were no outstanding warrants or issues related to the owner of the car”).
The majority disagrees. It concludes that “[t]he fact that O’Malley was driving what appeared to be a Michigan State Police vehicle was itself highly ‘unusual conduct,’ which led Hagler to draw the reasonable and objective inference that O’Malley may have been impersonating a police officer in violation of state law.” (Maj. Op. at 670) Although O’Malley’s vehicle may have been unusual because it had some of the markings of a Michigan State Police vehicle, Officer Hagler did not witness O’Malley take any actions that would have constituted a violation of § 750.215 or any other laws. Further, any reasonable suspicion that Officer Hagler might have had that O’Malley was impermissibly driving a Michigan State Police vehicle was dispelled after he called the Michigan State Police desk officer, who informed Officer Hagler that the Michigan *676 State Police did not own a vehicle matching the description given.
In addition, I believe that the majority’s analysis would allow a law-enforcement officer to pull over any vehicle similar to O’Malley’s based solely on the characteristics of the vehicle alone, without evidence that the driver has violated any Michigan law. This would be an unfortunate result for all those persons who lawfully own and lawfully drive retired Michigan State Police vehicles, particularly in a case like this one where the officer actually knew that the Tahoe was not a Michigan State Police vehicle. I believe that this is precisely why § 750.215 requires more than a showing that a suspect has assumed the identify of a peace officer, but rather that the suspect must have acted as such as well.

2. Clearly established right

Because I conclude that Officer Hagler’s action in pulling into the driveway behind the Tahoe violated O’Malley’s constitutional right to be free from unreasonable seizures, I must next determine whether this right was clearly established in the context of this case. Clearly established rights exist where “[t]he contours of the right [are] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.” Holzemer v. City of Memphis, 621 F.3d 512, 527 (6th Cir.2010) (internal quotation marks omitted).
That a Terry stop must be based on an officer’s reasonable suspicion of criminal activity has long been clearly established. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Williams, 962 F.2d 1218, 1223 (6th Cir.1992) (finding that an investigative stop of a vehicle is lawful where the officers have a “reasonable and objective basis for suspecting that [a] particular person is engaged in criminal activity”). Equally well established is the principle that an officer can interact with a citizen through a consensual encounter, “which may be initiated without any objective level of suspicion,” United States v. Avery, 137 F.3d 343, 352 (6th Cir.1997), so long as the “person to whom the questions are put remains free to disregard the questions and walk away,” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A consensual encounter, unlike a Terry stop, does not constitute a seizure under the Fourth Amendment. Mendenhall, 446 U.S. at 554-555, 100 S.Ct. 1870.
When the events in question took place in 2006, however, Officer Hagler was not on notice that his initial interaction with O’Malley was an investigatory Terry stop rather than a consensual encounter. This court’s decision in United States v. See, 574 F.3d 309, 313 (6th Cir.2009), was the first time that this circuit clearly stated that when a law-enforcement officer blocks a suspect’s car with a police vehicle to “determine the identity of the occupants and maintain the status quo while [he] obtain[s] this information,” he is conducting a warrantless Terry seizure. See also Gross, 624 F.3d at 322 (noting that “it was not until our recent decision in See ... that it would have been clear to Williams that his methods [of blocking in the suspect’s car] were decidedly an investigatory stop and not a consensual encounter”).
Although the facts in See and Gross are not identical to the case before us, I believe that they are sufficiently similar to provide notice to Officer Hagler, and to other law-enforcement officers, that they cannot rely on qualified immunity as a defense under the circumstances present *677 ed here. But Officer Hagler’s initial encounter with O’Malley in 2006 took place prior to this court clearly establishing that blocking a suspect’s car constituted a Terry stop for which reasonable suspicion is required. I therefore agree with the majority that Officer Hagler is entitled to qualified immunity with regard to his initial interaction with O’Malley, even though the basis for my conclusion is completely different.
B. Officer Hagler’s detention and handcuffing of O’Malley
This leads me to the question of whether Officer Hagler is entitled to qualified immunity as a matter of law for his decision to detain and handcuff O’Malley. Unlike the majority, I believe that genuine issues of material fact remain regarding this issue. “In this circuit, it is well established that, for appellate jurisdiction to lie over an interlocutory appeal, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.” Sheets v. Mullins, 287 F.3d 581, 585 (6th Cir.2002). “Once a defendant’s argument drifts from the purely legal into the factual realm and begins contesting what really happened, our jurisdiction ends and the case should proceed to trial.” Berryman v. Rieger, 150 F.3d 561, 564-65 (6th Cir.1998) (dismissing an interlocutory qualified-immunity appeal because the “defendants’ appeal attempts to persuade us to believe their version of the facts”).
Although Officer Hagler’s brief states in a footnote that the underlying facts are undisputed, his recitation of the facts regarding the detention and handcuffing of O’Malley differs in material ways from the facts as alleged by O’Malley. Officer Hagler contends that O’Malley immediately exited the Tahoe and quickly proceeded toward the back door of the residence in question. He also asserts that once O’Malley turned around, he “greeted Officer Hagler with inexplicably aggressive behavior before identifying a firearm nearby.” Officer Hagler further claims that he made several attempts to “de-escalate” the situation, but that O’Malley refused to cooperate. In light of the facts as he presents them, Officer Hagler argues that he acted reasonably when he decided to handcuff O’Malley.
In contrast, O’Malley alleges that he truthfully answered all of Officer Hagler’s questions and complied with his requests, but was nonetheless placed in handcuffs when he walked over to Officer Hagler. O’Malley also denies that he threatened Officer Hagler in any way, although he acknowledged in his deposition that he was mad at the way he was being treated and had raised his voice to Officer Hagler. The majority cites the fact that O’Malley “turned his back and lifted his shirt” as support for its conclusion that Officer Hagler permissibly handcuffed and detained O’Malley. (Maj. Op. at 670) But O’Malley testified at his deposition that he “turned around to let him know I didn’t have anything on me,” which hardly supports Officer Hagler’s actions.
Given that a genuine dispute remains regarding exactly how the encounter between Officer Hagler and O’Malley unfolded, a reasonable jury could find either (1) that a reasonable officer would have handcuffed O’Malley because the circumstances warranted that precaution, or (2) that Officer Hagler acted unreasonably given that O’Malley did not pose a threat under the circumstances. See Dorsey v. Barber, 517 F.3d 389, 399-400 (6th Cir.2008) (holding that the reasonableness of the force used must be evaluated from the perspective of a reasonable officer at the scene, which requires careful attention to the facts of the particular case, including “(1) the severity of the crime at issue, (2) the imme *678 diacy of the threat posed by the suspect to the officers or others, and (3) whether the suspect is actively resisting arrest”) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).
And because Officer Hagler “challenges the quantity and quality of [O’Malley’s] evidence ... [,] the narrow boundaries of [this court’s] jurisdiction prevent us from proceeding any further.” See Berryman, 150 F.3d at 564. This portion of Officer Hagler’s appeal “boils down to credibility determinations [that this court] cannot make.” See id. I therefore conclude that a jury, and not this court, should determine whether Officer Hagler’s actions were reasonable under the circumstances, or whether they constituted a violation of O’Malley’s Fourth Amendment rights. For this reason, I respectfully dissent on this issue.