KAREN NELSON MOORE, Circuit Judge,
dissenting.
The factual record developed by the district court on remand essentially affirmed that previously presented to this court for review. Accordingly, the conclusion I previously expressed in concurrence remains unchanged: The encounter between Carr and the police officers was neither consensual nor supported by reasonable suspicion and, consequently, was in violation of the Fourth Amendment. See United States v. Carr, 355 Fed.Appx. 943, 949 (6th Cir.2009) (unpublished opinion) (Moore, J., concurring).
I. CONSENSUAL ENCOUNTER
The law of this Circuit is clear that a Terry stop occurs when a police officer positions his or her vehicle to prevent an individual from physically leaving a citizen-police encounter. United States v. See, 574 F.3d 309, 313 (6th Cir.2009); United *576 States v. Gross, 662 F.3d 393, 399-400 (6th Cir.2011). The law is also clear that, absent other coercive actions, a Terry stop does not occur when a police officer positions his or her vehicle so as to preserve the individual’s ability to leave the scene easily and without obstruction. See, e.g., United States v. Dingess, 411 Fed.Appx. 853, 856 (6th Cir.2011) (unpublished opinion) (concluding encounter was consensual where officers parked on gravel on the side of the road “without blocking Dingess’s egress”). However, the law has never endorsed a bright-line rule that so long as an individual can physically leave the site of a citizen-police encounter, the encounter remains consensual for Fourth Amendment purposes. See United States v. Baldwin, 114 Fed.Appx. 675, 678 (6th Cir.2004) (unpublished opinion) (concluding that where officers parked both in front of and behind defendants’ vehicle, the defendants were seized even if it remained unclear whether they “could have exited the area even if they felt free to do so”). Instead, the standard is whether a reasonable person would feel free to leave under the totality of the circumstances. See, 574 F.3d at 313.
On remand, a second law-enforcement officer testified, and corroborated his partner’s prior testimony, that the police vehicle was stopped approximately ten-to-twelve feet from Carr’s vehicle, R. 102 (Evid. Hr’g Tr. at 20:20), that the police officers flashed their lights once to identify themselves, id. at 16:17-19, and that, while it was possible for Carr to leave the scene, he would have had “to steer and maneuver around [the police] vehicle” to exit forward or back up and reverse his vehicle to exit through the car wash’s rear, id. at 21:1-3, 26:23-24. The officer also testified that maneuvering the car forward would have required steering toward a “rail” and a “ditch” located near the vehicles, both of which were large sport-utility vehicles. Id. at 26:4-15, 27:8-22.
While perhaps it was physically possible for Carr to leave the scene of the encounter, doing so would have been no simple feat given the various obstacles and maneuvering required. The police officers positioned their vehicle so as to obstruct Carr’s forward-exit pathway, leaving him with only a clear rear exit, which would have required him to reverse the direction of his vehicle. Moreover, it was not as if the police officers were without other options for the positioning of their vehicle: They could have entered through the rear of the car wash and parked behind Carr’s vehicle so that his forward-exit pathway was completely unobstructed, or they could have parked inside or in front of one of the adjacent bays. See id. at 29:1-30:7. The police officers, however, chose not to do so. Their choice is relevant because it gave nonverbal cues to Carr about his freedom to terminate the encounter. Specifically, the flashing of the lights combined with the aggressive positioning of the police vehicle signaled to Carr that a stop was occurring and that he was not free to terminate the encounter.[1] Consequently, at the moment the police officers parked their vehicle in front of Carr’s vehicle a Terry stop occurred.
II. REASONABLE SUSPICION
The question that follows is whether there was reasonable suspicion to justify the Terry stop. No new facts regarding reasonable suspicion came to light during the evidentiary hearing on remand. Thus, the issue is whether reasonable suspicion *577 existed in light of the three facts previously identified by this court: (1) that Carr’s vehicle was parked at night at a car wash, but was not being washed (or at least not during the two-to-three minutes that the police officers observed the vehicle); (2) that the car wash was in a high-crime area; and (3) that the police officers previously received information that narcotics transactions had taken place at the car wash. Carr, 355 Fed.Appx. at 944. Our precedent compels the conclusion that these facts do not support a finding of reasonable suspicion. Gross, 662 F.3d at 400 (concluding that the “fact that Williams observed a vehicle parked in a public parking lot with the engine running and no driver behind the wheel in the early hours of the morning with a passenger ‘slumped down’ in the front passenger seat” did not alone support a finding of reasonable suspicion); See, 574 F.3d at 314 (finding a lack of reasonable suspicion where the police officer “was not responding to a complaint, he did not suspect the men of a specific crime, he had not seen the men sitting in the car for an extended period of time, he was not acting on a tip, he had not seen the men do anything suspicious, and the men did not try to flee upon seeing [the police officer] approach”).
As the majority admits, we have held that the time of day and high-crime nature of the area are insufficient to support reasonable suspicion. See, e.g., See, 574 F.3d at 314; United States v. Blair, 524 F.3d 740, 750-51 (6th Cir.2008); United States v. Caruthers, 458 F.3d 459, 467-68 (6th Cir.2006). Although here a police officer testified that there was “information” that the car wash in question “was a meeting place” for narcotics transactions, the officer stated that they had never executed “any undercover drug buys” at this particular car wash. R. 81 (Supp. Hr’g. Tr. at 8:25-9:12). Moreover, there was no testimony of any tips that a narcotics transaction would be occurring at the car wash at the time that they observed Carr’s vehicle in the bay. The fact that the police officers had a broad, general, and uncorroborated tip that narcotics transactions had occurred at this car wash in the past did not provide reasonable suspicion that Carr was involved in such a transaction by virtue of his presence at the car wash. Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (anonymous uncorroborated tips “lacking] the moderate indicia of reliability” and “providing] no predictive information and therefore [no] means to test the informant’s knowledge or credibility” are insufficient to establish reasonable suspicion); cf. Caruthers, 458 F.3d at 468 (“[A]n individual, whose general appearance and location matched the description given in the anonymous shot-fired call, fled and made furtive movements when approached by the police late at night in a high-crime area— provided reasonable suspicion to conduct a Terry stop.”). In essence, this tip was no different than the instruction to the officer in See to pay attention to loiterers because of knowledge of increased robberies in the area. See See, 574 F.3d at 314.
Moreover, the lack of visible activity for two-to-three minutes, even in a nonresidential parking lot, was not sufficient to supply reasonable suspicion under See and Gross. Even the officers testified that when they approached the vehicle to investigate they did not have any particularized suspicions of criminal wrongdoing, but were more concerned about citizen welfare. R. 81 (Supp. Hr’g Tr. at 9:17-24, 16:21-17:21).[2] That the officers found *578 Carr’s presence at the car wash “odd” was simply not equivalent to reasonable suspicion to investigate. Id. at 9:20. Perhaps after a more lengthy observation of the car parked without any washing activity the police officers’ hunches would have ripened into reasonable suspicion. However, the police officers chose not to allow for this possibility. In doing so, they acted in violation of the Fourth Amendment.
Accordingly, I respectfully dissent.

. Ironically, it is the majority’s opinion that appears to endorse a bright-line rule — the establishment of which it criticizes — that, so long as a driver can physically leave the site of a citizen-police encounter, he has not been subject to a Terry stop.

. This Circuit recently reaffirmed that a “community-caretaking function” is distinct from criminal investigation and cannot, standing alone, justify an investigative stop. *578 Gross, 662 F.3d at 400-01 (distinguishing instance where officer conducted an investigative stop in the interest of community well-being where there was already an illegality justifying the stop).