<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0593n.06

Case No. 19-1193

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Dec 06, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| QUINCY TREMAYNE BLOODWORTH, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendant-Appellant. | ) | **O P I N I O N** |

**BEFORE: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.**

**McKEAGUE, Circuit Judge.** After smelling fresh marijuana, a Kalamazoo police officer blocked a white car into a residential driveway. The backseat passenger, Quincy Bloodworth, took off running. The police caught up to him and found that he was carrying a gun. After being charged with federal firearms offenses, Mr. Bloodworth moved to suppress the evidence of the gun on the grounds that it had been discovered in violation of his Fourth Amendment rights. The district court denied the motion. For the following reasons, we AFFIRM.

**Background**

The incident at issue took place on June 13, 2018. It was a summer evening in Kalamazoo, Michigan. Public Safety Officer Nicholas Oliver was scheduled to work the night shift, starting at 7:00 PM. At about 5:30 PM, Officer Oliver spotted a white Saturn sedan in downtown Kalamazoo. Behind the wheel was Mark Ross, who had outstanding warrants for his arrest. Naturally, Officer

Oliver wanted Ross arrested. But he was off duty, driving his personal car and wearing street clothes. He called for assistance, but nobody was able to come help. So Officer Oliver did not arrest Ross at that time.

A few hours later, after Officer Oliver had started his shift, he again spotted a white Saturn sedan. This time, the sedan was in the 900 block of Hayes Park, a residential street in southeast Kalamazoo. According to Officer Oliver, the 900 block was a "problem area," known for drugs and occasional violence. It's a small one-way street, and the white Saturn was in the middle of that street, stopped in front of one of the houses. One person was leaning into the car, and a few others were hanging out in the yard in front of where the car was parked. According to Officer Oliver, drug transactions in the 900 block will sometimes involve the dealer leaning into the car window to make a hand-to-hand swap. Other times the dealer will hop in the backseat and conduct the transaction from there. Either way, the car and the crowd around it had piqued Officer Oliver's interest, so he decided to go check it out.

At first, all Officer Oliver intended to do was conduct a "citizen contact," which is a voluntary interaction between a member of the public and law enforcement. But to make sure the individuals in and around the car didn't scatter or go inside the house, he approached the car by the quickest way possible, turning against traffic down the one-way street. Recall that he was now on duty, so he was driving a fully marked patrol car. As he pulled up, the Saturn backed into a driveway. Officer Oliver thought this was suspicious—the car had backed into the spot right at the moment when the marked patrol car was approaching. Officer Oliver rolled down his window to see if he could see anything illegal or smell any drugs.

Officer Oliver claims that he smelled a heavy odor of marijuana when he came within about twenty feet of the white Saturn. Based in large part on his experience in over 215 drug-related

investigations, Officer Oliver concluded that the plant-like smell meant the marijuana was fresh—as opposed to burnt marijuana, which smells smoky. The Saturn was on the passenger side of Officer Oliver's cruiser. There is some dispute over whether Officer Oliver's passenger-side window was open, and by how much. Mr. Bloodworth highlights how, in Officer Oliver's testimony, he said he rolled down "his window," which Mr. Bloodworth takes to mean only the driver-side window. Now, we do have body-camera footage from Officer Oliver, although the footage starts only after Officer Oliver exited his car. (This is because the body camera started recording only after Officer Oliver activated it.) Still, we can see from the footage that the passenger window was open and being rolled back up as Officer Oliver was leaving his cruiser and approaching the Saturn. The district court concluded that "the fairest and strongest inference from [the body-camera footage] is the passenger window at least was open."

Officer Oliver pulled into the driveway, blocking the white Saturn in. At that point, Mr. Bloodworth was in the backseat, on the rear passenger side. He started to leave the car and walk away, but Officer Oliver ordered him to get back in (which he did). Officer Oliver recognized Mr. Bloodworth from previous investigations in the 900 block of Hayes Park. Along with Mr. Bloodworth, there were two other people in the car, one in the driver's seat and one in the passenger's seat, neither of whom was Mark Ross, the man Officer Oliver had seen in the other white Saturn earlier. Officer Oliver approached the driver-side window. Just as he got there, Mr. Bloodworth again opened the car door (now on the opposite side of Officer Oliver) and started to walk away. After Officer Oliver told him to get back in the car, Mr. Bloodworth started running.

Officer Oliver took off after him. As he ran, Mr. Bloodworth had his hand on his waist, at least according to Officer Oliver. After a brief chase, through backyards and even over a fence, Officer Oliver eventually caught up to Mr. Bloodworth and tackled him. He struggled to detain

Mr. Bloodworth after the two had fallen to the ground. According to Officer Oliver, Mr. Bloodworth was reaching for his waistband, which made Officer Oliver concerned that he had a weapon. To subdue Mr. Bloodworth and keep him from reaching his waistband, Officer Oliver punched him several times. Eventually, more officers arrived on the scene, and they were able to handcuff Mr. Bloodworth. The officers then discovered a gun on Mr. Bloodworth's person.

Mr. Bloodworth was charged with two firearm offenses: being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possessing a stolen firearm, 18 U.S.C. § 922(j). He moved to suppress the evidence discovered after he fled the scene of the white Saturn at Hayes Park, arguing that Officer Oliver did not have reasonable suspicion of criminal activity. The district court denied that motion.

In doing so, the district court determined that, under the totality of the circumstances, Officer Oliver had reasonable suspicion to block the car. The court relied on a number of factors: (1) the similarities between the car in Hayes Park and the car Mark Ross was driving earlier that same day, (2) the high-crime reputation of the 900 block of Hayes Park, (3) the individual leaning into the car window, (4) the car backing into the driveway as soon as the police cruiser arrived, and (5) the odor of marijuana. The district court also considered Mr. Bloodworth's flight.

Importantly, the district court found Officer Oliver credible. The court believed the officer when he testified that he could smell fresh marijuana. From both the testimony and the body-camera video, the court concluded that Officer Oliver did have his passenger-side window open. The court also noted that plants can emit strong odors, and police officers are trained to pick up on these odors more readily than the average member of the community.

After his suppression motion was denied, Mr. Bloodworth pleaded guilty to both counts in the indictment and was sentenced to 120 months of imprisonment followed by three years of

supervised release. He now appeals the denial of his suppression motion, which he reserved the right to do.

## Standard of Review

When reviewing a district court's order denying a motion to suppress on reasonable-suspicion grounds, we apply a mixed standard of review. We review factual findings for clear error and legal conclusions de novo. *United States v. Belakhdhar*, 924 F.3d 925, 927 (6th Cir. 2019). In conducting this review, we are mindful of the district court's "institutional advantage" from "having observed the testimony of the witnesses and understanding local conditions." *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004) (quoting *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002)). For that reason, we give "due weight" to the district court's "inferences drawn from the facts," *id.*, and review the evidence "in the light most likely to support the district court's decision," *Belakhdhar*, 924 F.3d at 927.

## Discussion

Mr. Bloodworth argues that the evidence offered against him was discovered in violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects" by prohibiting "unreasonable searches and seizures." U.S. Const. amend. IV. It permits law-enforcement officers to conduct brief but forcible investigatory stops short of a full arrest, as long as the stops are supported by reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 22 (1968); *United States v. Place*, 462 U.S. 696, 702 (1983). There are thus two key questions in this case: (1) whether the encounter was a seizure under the Fourth Amendment, and (2) whether, if it was a seizure, it was supported by reasonable

suspicion. We hold that Mr. Bloodworth was seized, but his seizure was supported by reasonable suspicion.

### *Was There a Seizure?*

When Officer Oliver pulled his police cruiser in front of the white Saturn, blocking it into the driveway, he initiated a seizure within the meaning of the Fourth Amendment. An encounter between law enforcement and a civilian is a seizure if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)). We have previously held that using a police cruiser to block a car into a space constitutes a seizure. *Id.* at 399–400; *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009). Here, we similarly find that when Officer Oliver pulled into the driveway and blocked the white Saturn in, the passengers in the car would not have believed they were free to leave, and thus they were seized. *See Gross*, 662 F.3d at 400 n.1 ("That [the defendant] was a passenger in the car rather than the driver is of no moment, as a passenger in a seized vehicle is also made to feel that he is not free to leave.").

### *Was the Seizure Justified?*

For a *Terry* stop to be justified, the officer need only have "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *Place*, 462 U.S. at 702. Suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21. This standard is an objective one, asking whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the

action taken was appropriate." *Id.* at 21–22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

When reviewing whether reasonable suspicion exists, we look to the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The totality inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). As a result, behavior that might be "by itself readily susceptible to an innocent explanation" can nevertheless form part of the basis of an officer's reasonable suspicion. *Id.* at 274; *see also United States v. Sokolow*, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.").

Among the factors addressed by the district court, we first review its reliance on the white Saturn's presence in a high-crime area, then its reliance on Officer Oliver's detection of the smell of marijuana. We then address the remaining contextual factors forming the totality of the circumstances. Taken together, the circumstances are sufficient to establish reasonable suspicion, and thus the district court did not err in denying the motion to suppress.

*High-Crime Area*. The district court noted that Mr. Bloodworth was detained in a high-crime area. To be sure, "[a]n individual's presence in an area of expected criminal activity, *standing alone*, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (emphasis added); *United States v. Caruthers*, 458 F.3d 459, 467–68 (6th Cir. 2006), *abrogated on other grounds by Cradler v. United States*, 891 F.3d 659, 671 (6th Cir. 2018). But at the same time, "officers are not required

to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124. The district court was therefore justified in relying on Officer Oliver's characterization of the area as part of its assessment of reasonable suspicion.

On the high-crime-area factor, Mr. Bloodworth likens his case to two of our precedents where we found no reasonable suspicion even though the events took place in a high-crime area: *United States v. See*, 574 F.3d 309, and *United States v. Gross*, 662 F.3d 393. But in both those cases, there was far less contextual evidence supporting reasonable suspicion. In *See*, aside from being in a high-crime area, the defendants were detained merely because they were sitting in a car early one morning away from a housing complex, with their lights off and without a front license plate (which was not a traffic violation, because the car had valid temporary tags). 574 F.3d at 313–14. And in *Gross*, again aside from being in a high-crime area, the defendant was detained merely for sitting slumped in his legally parked car (with the engine running) early in the morning. 662 F.3d at 396–97.

Here, there are more contextual factors supporting reasonable suspicion than there were in *See* and *Gross*. By the time he detained Mr. Bloodworth, Officer Oliver had noticed a car of the same make and model as one he knew belonged to someone with an outstanding arrest warrant, observed behavior consistent with a drug transaction, witnessed potentially evasive movements, and most importantly smelled marijuana. Unlike in *See* and *Gross*, here the officer can point to specific behavior suggesting possible criminal activity. Thus, it is much clearer here than it was in *See* and *Gross* that the criminal reputation of the area formed only a part of the officer's totality-of-the-circumstances assessment. Those cases are therefore distinguishable.

Mr. Bloodworth also argues that this is not a situation like *United States v. Caruthers*, 458 F.3d 459. There, the court considered the high-crime area's reputation as a factor largely because the area was narrowly defined ("a specific intersection rather than an entire neighborhood") and was known for criminal activity related to the reason for which the defendant was detained. *See id.* at 468. That was not the case here, according to Mr. Bloodworth. We disagree. The area here is narrowly defined, since Officer Oliver acted based on the reputation of one specific residential block. And Mr. Bloodworth even admits that the 900 block of Hayes Park was known for drug activity. That is exactly what Mr. Bloodworth was detained for—Officer Oliver blocked the white Saturn into the driveway in large part because he smelled marijuana. So if anything, *Caruthers* reinforces a finding of reasonable suspicion here.

*Marijuana Odor*. Mr. Bloodworth contests Officer Oliver's ability to detect the smell of unburnt marijuana. According to Mr. Bloodworth, it is not credible that Officer Oliver could have determined from twenty feet away through a passenger-side window that there was fresh marijuana near the white Saturn. Notably, Mr. Bloodworth does not argue that the smell of marijuana is not enough to create reasonable suspicion. Nor could he, because we have found that the smell of marijuana can satisfy not only the reasonable-suspicion standard but also the even higher standard of probable cause. *See United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013). Moreover, we give due weight to the district court's fact finding, because it can hear witness testimony directly and determine credibility far more reliably. *Foster*, 376 F.3d at 583. Here, the district court heard Officer Oliver's testimony, took note of how officers like him are trained to detect narcotics, pointed out how plants can often emit strong odors that even lay persons can detect, and accordingly credited Officer Oliver's testimony as truthful. Giving the district court the deference

it is due, we cannot find clear error in its determination that Officer Oliver smelled marijuana coming from the direction of the white Saturn.

Mr. Bloodworth points to three additional factors in an attempt to undermine the credibility of Officer Oliver's assertion that he smelled marijuana: (a) Officer Oliver did not turn on his dash camera, (b) he did not disclose all the relevant facts in his report, including that he had a civilian "ride-along" in the police car with him, and (c) he took off after Mr. Bloodworth. The dash camera and the ride-along could have corroborated Officer Oliver's claim—for example, if the dash camera recorded some conversation between the two where they discussed the smell of marijuana. According to Mr. Bloodworth, the absence of this corroborating information should be held against Officer Oliver. Additionally, Mr. Bloodworth asks: if Officer Oliver really believed there were drugs in the car, why did he abandon it and take off after Mr. Bloodworth?

However, all these facts bearing on Officer Oliver's credibility were before the district court. And as we have already noted, the district court is far better situated to make credibility determinations. The district court acknowledged these additional facts and still found Officer Oliver believable—the court credited, for example, Officer Oliver's explanation that he did not turn on the dash camera because he did not want to make the civilian ride-along uncomfortable by recording their entire conversation. Giving due weight to the district court's credibility finding, we do not find clear error here.

*Remaining Factors.* Besides the marijuana smell and the car's presence in a high-crime area, the district court also considered (a) the car's similarity to Mark Ross's, (b) the person leaning into the car, and (c) the car's backing into the driveway upon seeing the police cruiser. Even though our precedents make clear that the reasonable-suspicion inquiry is based on the totality of the circumstances, Mr. Bloodworth takes a more segmented approach here. He goes factor by factor

and argues that many of those relied on by the district court are susceptible to perfectly innocent explanations. For example, Officer Oliver was suspicious that the white Saturn was Mark Ross's car, but white Saturns are common enough that the car could have belonged not to Mark Ross, but to a completely innocent person. Officer Oliver thought that a person leaning into a car window could suggest a drug deal in progress, but it could also suggest that a friendly neighbor was stopping by to say hello. Officer Oliver thought that backing the car into the driveway was evasive, but the car could simply have been getting out of the way.

Maybe. But that does not mean that Officer Oliver should have *ignored* these factors simply because they were susceptible to innocent explanations. The Supreme Court has explicitly rejected this type of analysis. *See Arvizu*, 534 U.S. at 273–75. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277. A finding of reasonable suspicion does not even mean the officer has probable cause that criminal conduct is occurring. It simply means that the officer has seen enough that would "warrant a man of reasonable caution in the belief" that a brief investigatory detention is necessary. *Terry*, 392 U.S. at 22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). And under the *Terry* standard, factors that, taken on their own, would be "susceptible of innocent explanation" can nevertheless form the basis of reasonable suspicion. *Arvizu*, 534 U.S. at 277–78.

In total, we find that there was reasonable suspicion to block the white Saturn into the driveway. Taking together the smell of marijuana in an area known for drug violations, the person leaning into the car, and the car's backing away as soon as the police car approached, Officer Oliver was reasonable in suspecting some drug-related activity. Thus, there was enough here to

warrant a reasonable person in the belief that criminal activity was afoot, so Officer Oliver was justified in detaining the car to investigate further.

*Mr. Bloodworth's Flight*

After the white Saturn was blocked in, Mr. Bloodworth left the car and eventually fled from Officer Oliver. On appeal, Mr. Bloodworth does not argue that Officer Oliver's subsequent pursuit was an improper means of executing a *Terry* stop. Instead, he makes two arguments about his flight. First, he argues that the flight occurred after the initial detention, so it cannot form the basis of Officer Oliver's reasonable suspicion. True, this court has previously found that "reasonable suspicion . . . cannot be based on events that occur after the defendant is seized." *United States v. Johnson*, 620 F.3d 685, 696 (6th Cir. 2010). However, here the district court concluded that Officer Oliver had reasonable suspicion even before Mr. Bloodworth's flight. And because we have concluded that the district court did not err when it found reasonable suspicion based on the already-discussed factors, we need not even address Mr. Bloodworth's flight as evidence contributing to reasonable suspicion. *See United States v. Lopez-Gonzalez*, 916 F.2d 1011, 1016 n.8 (5th Cir. 1990).

Second, Mr. Bloodworth argues that his flight was in response to illegal police conduct, so he was acting within his rights under Michigan law. *See People v. Moreno*, 814 N.W.2d 624, 625 (Mich. 2012). But we have already determined that Officer Oliver acted lawfully here, so Mr. Bloodworth's argument about resisting *unlawful* police conduct has no bearing on this case.

**Conclusion**

For those reasons, we AFFIRM the judgment of the district court.